## Thurman, &c. *vs* Morrison, &c.

APPEAL FROM JEFFERSON CIRCUIT.    Case 37.

1. One who owns land binding on the Ohio, or other navigable stream, has the right to use the soil to low water mark, and has the right to erect log-ways, and other conveniences proper for the enjoyment of all the benefits of the river, provided the navigation be not obstructed, and maintain an action for any injury or obstruction, in such use, of the river and banks.

2. One who obstructs another in the use of the banks of a navigable river, by suffering boats to sink and remain in the river above low water mark, to the prejudice of the owner of the land binding on the river, is liable to the owner of the lands in damages for the injury.

3. So he may use the waters of the river, who is the owner of the land on the navigable stream, if the navigation be not obstructed thereby.

Judge MARSHALL delivered the opinion of the court.    January 24.

Thurman & Co., as assignees of a lease demising a certain lot in the city of Louisville, between Beargrass creek and the Ohio river, having a front on the river of one hundred and seventeen and a half feet, filed their petition in the Jefferson circuit court against Morrison and others, to recover damages for alleged obstructions and disturbance occasioned by the defendants, to the use and enjoyment by the plaintiffs, of the bank of the river within the boundaries of the demised premises, and of the riparian rights claimed by them as incident to the ownership and possession of said premises. A demurrer to the petition was sustained, and a judgment having been rendered for the defendants, the plaintiffs have appealed to this court for its reversal.    Case stated.

The petition states, in substance, that a saw-mill was erected on said demised premises, which was wholly supplied with logs by means of the river; that for the purpose of drawing the logs from the river up to the mill to be cut, ways were constructed from the mill, projecting into the river *beyond low water mark*, and were used for the purpose aforesaid; that at the time of the acts complained of, and before and ever

since, the plaintiffs were entitled to, and except so far as obstructed by the defendants, had the use and possession of the leased ground down to low water mark, and also of *the river and riparian rights in front of said lot.* And the matter complained of, as stated in the petition, is, that on the — day of February, 1852, the defendants, by themselves or agents, landed two large flat boats loaded with stone coal, in front of their said lot, and across the foot of their said log-ways, so connected with their saw-mill, and that, although notified to remove the same, and warned of the rights of the plaintiffs, they failed and refused to do so, but permitted said boats to remain at plaintiffs landing in front of said lot, and across said log-ways, for the space of —— days, when, from want of proper care and attention, and because of defendants negligence and bad management, and in not having a sufficient and capable crew on board to take care of said boats, they sunk, greatly obstructing the plaintiffs in the use of their mill, and to their great damage. And the plaintiffs further state, that after said boats were sunk they repeatedly requested the defendants and their agents to remove them, which they promised but refused to do, until the — day of October, 1852; that during all the while the plaintiffs were greatly obstructed in the use of their said landing and log-ways, and were compelled, because of the obstruction from said sunken boats, to stop the running of their saw-mill, and be idle at different periods, while said boats lay sunk at and across their log-ways, to-wit: for the period of twenty-nine days; and that, even when by reason of sufficient water they were able to get saw-logs to their mill and to run it, still they were put to great cost and charges for additional labor necessary to get the logs to the mill; also, that the sunken boats occasioned a great deposit on their log-ways, which required heavy expenditures to remove, and which it was necessary to remove in order to have the proper use of said ways, whereby, and in consequence of all

which, they say they have been greatly damaged, and they pray judgment for $1,200, &c.

This petition having been adjudged bad on demurrer, the plaintiff offered an amendment, stating, in substance, that at the time when said boats were landed and sunk, the said log-ways, so far as they extended into the river below low water mark, were embeded in the soil at the bottom of the river, and did not rise above the bed of the river. The amendment was objected to, and was not permitted to be filed as a part of the petition, to which the plaintiffs excepted. They are of course entitled, in this court, to the benefit of the amendment as if it were a part of the petition, and the amendment repels the presumption, if it might otherwise arise, that the navigation was or would probably be impeded by that part of the log-ways which extended below low water mark.

The main objection taken to the petition seems to be founded upon the idea that damages are claimed only for an alleged injury to the log-ways of the plaintiffs so far as they extend into the river below low water mark; and it is contended, that the Ohio river is a public navigable river, the bed or soil of which, below low water mark, is not private but public property; that consequently the log-ways, so far as they extend below or beyond low water mark, are a nuisance, and that, therefore, no action can be maintained for an injury to them. But although the petition describes the log-ways as thus extending into the river, and claims a right thus to extend them; and although, in describing the injury, it states that the boats lay across the ends of the plaintiffs log-ways, we do not understand it as claiming damages exclusively for an alleged injury to that part of the structure, nor indeed as alleging any such injury, unless it be in the very last clause which mentions the deposit. And even if it does allege such injury, and claim damages for it, and if there can be no recovery as to that matter, because the structure itself to which the injury was committed is a nuisance, still, if in addition to this, the petition shows

in the plaintiffs an actual legal right, and an injury to that right by the defendants, it shows to that extent a cause of action, which should have sustained it against the general demurrer. It does not appear, explicitly, whether the water was high or low when the boats landed, or when they sunk. But if we are to take judicial knowledge of the character of the Ohio river, as we undoubtedly may, we might, if it were material, assume, both from the time of the year and from the fact of large flat boats being at Louisville with heavy loads, that the river was up, and that the boats landed and were sunk above the low water mark, and therefore, in part at least, above that portion of the log-ways which was below the low water mark. But we regard this assumption as of little consequence in the present attitude of the case. The material complaint is not that the log-ways were injured in any part, but that the plaintiffs have been obstructed by the defendants in the accustomed use of their bank and landing, and of the water in front thereof, and of the log-ways which they had constructed from their mill to and under the water, all of which were used for receiving logs at the surface of the water and drawing them up to the mill. And even if they have extended their log-ways a little further under the water than they had a right to do, and if the defendants had a right to cut them off at low water mark, as being a nuisance, this would not imply a right to obstruct the plaintiffs in their ordinary use of the bank, and of the water in front, and of the log-ways from low water mark to their mill.

But if it be conceded that the Ohio river is a stream of such a character that the river itself, and its bed or the soil at the bottom, is to be regarded as belonging to the public, though the land on its side be granted to individuals, (a concession which, so far as the bed of the river below low water mark is concerned, we might be inclined to make,) it would not still follow that the extension of these log-ways into the river beyond low water mark, so far as might be ne-

cessary for the purpose of drawing up logs, and so imbeded in the soil at its bottom as not to rise above it, would be a nuisance or an unlawful act, or anything more than a legitimate use of the river by the riparian owner.

It would be against all our experience, and contrary to the operation allowed to grants of land on the Ohio river, to say that such as call for and bind on the river do not vest in the grantee the proprietary right down to low water mark. But as the river, at whatever stage, is a public highway, or a public navigable stream, of which every part is free for the navigation of all persons with such vessels and freights as the stream will bear, this proprietary right to the bank or shore between high and low water mark is necessarily subject to the public easement. It is understood, however, that this public or common right of navigating the river, whether it flow over public or private land, does not give to the navigator the right at pleasure to land upon and use the adjacent banks, the property of private individuals, for such purposes and for such length of time as he may choose; and certainly the right to the free use of the river, for the purposes of navigation, gives no right to the navigator wantonly to obstruct the riparian owner in the free use of the adjacent river and bank for all those purposes which, being useful to him in his condition, may be accomplished without detriment to the public right.

A strong illustration of this riparian right, and of the injury to it, is presented in the argument in behalf of the plaintiff, founded on the analogy between a public highway on land and the public highway for navigation on a river. The case is that of the owner of a farm, (or a factory,) adjacent to a public road, whose only access to the road is through a gate on his own land, but immediately adjacent to the road, by means of which he is enabled to use the road for the purposes of his business; and it is supposed that the conductor of a wagon, having a perfect right to use

1. One who owns land binding on the Ohio, or other navigable stream, has the right to use the soil to low water mark, and has the right to erect log-ways, and other conveniences proper for the enjoyment of all the benefits of the river, provided the navigation be not obstructed, and maintain an action for any injury or obstruction, in such use, of the river and banks.

the road as a passway, stops his wagon on the line of the road immediately in front of the gate, and precluding all access through it, remains there for days or weeks, during which the adjacent proprietor having daily necessity for the use of the road is compelled, by this obstruction, to forego its use with a consequent loss to himself, or to incur the expense and trouble of constructing or acquiring a new approach to it. To say that this is not an injury to the adjacent proprietor is to deny his right to the common use of the road, and to the free use of his own land and gate, of which the wagoner had deprived him.

But the case of the riparian proprietor is even stronger. For while the owner of land on the side of the road not being the owner of the land over which it passes, has no right or use in the road except as a passway, the riparian owner has not only the common right of using the river for navigation but has many other important rights in the use of it, which, although they may also be regarded abstractly as common rights, are yet, in consequence of his contiguity to the river, practically peculiar and in effect exclusive, and are consequently denominated riparian rights. If, on principles of policy, and to secure the public right of navigation, a grant of land lying on the Ohio does not convey the property in the bed or soil of the river, *ad medium aqua filum*, but the same remains in the public to the low water mark on each side, it is held not for any specific use of the public in its collective capacity, except the use of protecting the rights of navigation, but like the stream or water itself, it is held by the public for the common use of all individuals for such appropriate purposes, and in such manner, as are not injurious to, nor inconsistent with the public right of navigation, and consequently it may be so used by any and all individuals who can get to it without such use being a trespass or on any account illegal. For instance, if it be physically practicable, any man may cross the river at any place where he can approach it, either on foot or on horse-

back, or on stilts ; and, although in so doing he treads upon the public ground, and may break the soil, he is not a trespasser. And so in rivers, technically navigable, where the tide ebbs and flows, and the right of fishing is common, and individuals, unless prohibited by law, may take oysters and other shell fish, although in doing so they not only tread upon the public soil, but actually break it. In the cases of *Bagott v. Orr*, 2 *Bos. & Pul.* 472, and *Peck v. Lockwood*, 5 *Day's Reports*, 22, it seems to have been decided, that though the sea-shore between high and low water mark be held by grant as private property, the common right still exists to go there and fish, and even to dig and take shell fish—3 *Kent's Com.*, 417—and although this decision, as applicable to the case in which the sea-shore itself was private property, may be doubtful, the doubt does not extend to the existence of the common right where the sea-shore remains public property, but only goes to the question whether, by the grant of the sea-shore to an individual, the exclusive right of taking fish there is not also granted, and the common right consequently extinguished. The existence of such common right before and independently of the grant to individuals, is the basis of the decision, and is too well established to be disputed.

Then what effect is to be given to the fact, that in this case the log-ways of the plaintiff extended into the river beyond low water mark? We say, that if such extension was necessary or convenient for the appropriate and rightful use of the bank, and of the adjacent river by the plaintiffs, as riparian proprietors, and if it were so constructed as to constitute no actual or probable impediment to the navigation of the river, the structure was not a nuisance, nor, so long as the public permits it to remain, can it be treated by individuals as an illegal intrusion upon the public property, constituting a purpresture. But until complained of by the public the possession and use of it must be regarded as lawful, and as therefore entitling the possessor to an action for damages for an injury

THURMAN, &c.
vs.
MORRISON, &c.

to it which deprives him of the lawful advantages which its use affords, and subjects him to expense and loss, and which is not itself committed or does not happen as an incident to the lawful rights of navigation.

All persons, and especially those near or upon the banks of the river, have a right to use the water itself, and to take it from the river, not merely for drinking but for all ordinary and useful purposes, and in all modes which do not involve such permanent and material diversion of the stream as may impair its use for navigation, and which are not otherwise inconsistent with or injurious to that use. We suppose there can be no doubt that a mill or other machinery on the top of the bank may be supplied with water from the river for the purpose of generating steam; and if this may be done by transporting the water from the river to the steam boilers in casks and upon vehicles, which may enter the river and stand upon its bed, surely it cannot be illegal to draw up the water by means of the machinery itself, and through pipes extending along the bed of the river so far as to insure a supply of water at all times, provided the pipes be so laid, as indeed they must be for their own safety, as not to impede or impair the navigation. We suppose a navigator of the river would have no right to stop up, nor unnecessarily to obstruct the mouth of such a pipe, merely because it extended into the river beyond low water mark, and that he would be liable for such act, to the person having the use of the mill and the pipe.

But if the mere right of using the water of the river, on the top of the bank, authorizes the adoption of the best means for raising it which are not inconsistent with the public right of navigation, it seems still more evident, that subject to the same restriction with respect to the public rights, the riparian owner, having a mill or other establishment on the bank which receives its supplies from vessels in the river, and sends out its products in the same way, must

3. So he may use the waters of the river, who is the owner of the land on the navigable stream, if the navigation be not obstructed thereby.

have the right of constructing such road or ways, and such apparatus connected with them, as would best facilitate this necessary intercommunication, or such as would best accord with his own views or circumstances. It is a benefit to the public that the riparian proprietors should enjoy these advantages naturally pertaining to their locality. It is a benefit to navigation itself, as well as to producers and consumers, that the facilities for lading and unlading vessels in the river and for transporting commodities between them and the table land on the bank, should be encouraged and protected, and if in providing these facilities, it be found necessary that the road or way, however constructed, must, in order that it may meet the vessel which has brought, or is to take away its cargo, shall extend on the bed of the river beyond low water mark, and this is done by the proprietor, so as not to impede or interfere with navigation, the consent of the public to his act should be presumed, and therefore his possession, so long as it may be permitted to continue, should be deemed lawful. In the present case the plaintiffs had the right to appropriate their bank to the purpose of receiving saw-logs for the use of their mill; they had a right to construct logways, not impeding the navigation, so as to facilitate the removal of the logs from the river to their mill; and, as it was obviously advantageous if not necessary so to extend them into the river, as that they might receive the logs while in the water, such extension along the bottom of the river, and so imbedded in it as not to obstruct navigation, was not wrongful. The construction of these log-ways was itself an indication that the bank was appropriated to the reception of logs for the mill; it was, moreover, an advantage to the navigation of the adjacent part of the river, by facilitating and expediting the removal of the logs from the river.

The defendants had no right, unnecessarily, to land their boats at the plaintiffs bank and landing thus appropriated to their own use; they had no right to

Thurman, &c.
vs.
Morrison, &c.

lay their boats across the log-ways of the plaintiffs, nor even at the foot of them, whether above or below low water mark, so as to obstruct the use of them; and if their acts might in the first instance have been justified by necessity or excused by ignorance, the continuation of them after warning was itself a wrong, injurious to the rights of the plaintiffs, and which was aggravated by being prolonged by the sinking of the boats. Upon the face of the petition these injuries are without excuse, and as they are shown to have produced damage, the plaintiffs are certainly entitled to recover upon their own statement, unless it be true, as contended, that the lease which they file with the petition negatives their right.·

This argument is founded upon a clause in the lease to the effect that it was agreed between the parties that the portion of the demised premises, bordering on the river, "should remain free and open as a wharf, and the passway across the same shall not be obstructed by any building or the like, agreeably to an arrangement made between said Johnston, (the lessor,) U. P., and others." But this is no dedication of the slip of ground to the public, and if it proves that there was a wharf there, it would appear to be the wharf of the lessees and their assignees. And even if it gave the defendants a right to land at this bank as a wharf, it gave them no right to obstruct the plaintiffs in the use of their log-ways, nor to remain at the wharf with their boats obstructing every other use of it. But in truth this is but a private agreement between the lessor and lessee, referring to another private agreement between the lessor and others; and a subsequent memorandum made by the lessor upon the lease, whereby he dispenses with a part of the agreement, shows that it was a mere private arrangement, which gave no right to the public or to any stranger except so far as it should be executed, and of the non-execution or breach of which no stranger had a right to complain, nor could he claim any advantage from it. The lease extends to the riv-

er. The plaintiffs aver that they were in possession to the river. The defendants cannot take advantage of a condition or stipulation between lessor and lessee to restrict the possession, nor, on that ground, claim that the possession and enjoyment of the log-ways and the landing by the plaintiffs, as alleged in the petition, were unlawful. And upon the whole case as presented by the petition, we are of opinion that the plaintiffs have shown *prima facie* a possessionary right to the log-ways as they exist, and to the bank and landing between their mill and the river, with a common right to the use of the river itself and its bed immediately in front of their bank, and have shown a disturbance of and obstruction to these rights, apparently constituting an injury and occasioning damage; and consequently that they have shown, *prima facie*, a good cause of action.

Wherefore, the judgment is reversed, and the cause remanded, with instructions to overrule the demurrer to this petition as amended, or in other words, to receive the amendment, and for further proceedings.

LINDSEY, TYLER and JOHNSTON for appellant; SPEED, WORTHINGTON, and CALDWELL for appellees.